UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
YU CHEN, et al.,

                Plaintiffs,

       -against-

LW RESTAURANT, INC., et al.,

                Defendants.
--------------------------------------------------------X

**O R D E R**

10 CV 200 (ARR)

On January 19, 2010, plaintiffs filed their Complaint in this case, seeking damages in the form of unpaid overtime, unpaid minimum wages, unpaid spread of hours premium, liquidated damages, and attorney's fees and costs for defendants' alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor Law, N.Y. Lab. L. §§ 650-65. (Compl.[1] ¶¶ 1-2). Now before this Court is plaintiffs' motion, filed on April 8, 2011, seeking sanctions for defendants' spoliation of evidence and for their repeated failure to comply with numerous Court Orders regarding discovery, including their failure to provide responses to plaintiffs' interrogatories and to produce witnesses for deposition. Plaintiffs seek sanctions in the form of: 1) entry of a default judgment; 2) an Order precluding defendants from presenting any payroll records or electronic employee records at trial; 3) an Order precluding defendants from presenting any witnesses at trial; 4) an adverse inference instruction that the defendants willfully fabricated evidence; and 5) attorney's fees and costs spent in connection with the various discovery disputes and preparation of the current motion for sanctions.

---

[1]Citations to "Compl." refer to the plaintiffs' Complaint filed January 19, 2010.

## FACTUAL AND PROCEDURAL BACKGROUND

A. Initial Discovery Exchange and Deficiencies

Plaintiffs Yu Chen, Xin Shen, Yang Wang, and Zhi Yong Zhang allege that they were hired to work as waiters at defendants' restaurant, "A Taste of Shanghai," located at 39-07 Prince Street, Unit 1A, Flushing, New York 11354. (Id. ¶¶ 23-30). Plaintiffs each allege that during their respective periods of employment, spanning a period from in or about June 2008 through the summer of 2009, they worked a minimum of forty (40) hours per week and often worked over ten (10) hours a day. (Id. ¶¶ 31-32). Plaintiffs allege that defendants failed to pay either the FLSA overtime rate or the New York State overtime rate, failed to pay minimum wages, and failed to pay New York State "spread of hours" pay. (Id. ¶¶ 33-35). The Complaint brings claims on behalf of these named individuals and other similarly situated employees. (Id. ¶ 36).

Following the filing of the Complaint, the Court held an initial conference on May 19, 2010, at which a discovery schedule was set. The parties were directed to exchange documents and interrogatories and to appear for a second conference before the Court by telephone on July 12, 2010. During that July 12, 2010 conference,[2] plaintiffs expressed dissatisfaction with the defendants' responses to their discovery requests, and, in particular, with the payroll records that had been provided. The defendants' records, which purport to reflect the wages paid to various employees, contained no names in English and instead listed the employees with designations,

---

[2] Although he had not yet filed a Notice of Appearance, Xian Feng "William" Zou, Esq. appeared on behalf of the defendants at this conference. (See infra at 4).

such as "Waiter A" or " Waiter B" and "Fry Cook" or "Wok Cook."[3] Plaintiffs allege that the records that were produced must either have been altered to replace the employees' actual names or were created solely for purposes of this litigation.[4] (Pls.' 12/7/10 Ltr;[5] see also Pls.' Mem.[6] at 4; Pls.' Reply Mem.[7] at 1-2).

Pursuant to Court Order, plaintiffs submitted a status letter, dated July 19, 2010, detailing the alleged continued deficiencies and requesting production of electronically stored information ("ESI") for the defendants' payroll records, including metadata, based on their concern that the records that had been produced may have been recently created for purposes of the litigation. (Pls.' 7/19/10 Ltr, Ex. 1). The letter further indicated that with respect to the defendants' responses to plaintiffs' interrogatories, defendants had simply objected, stating for each one: "The defendants do not possess the documents requested other than the documents attached to the discovery request." (Id. at 2). Plaintiffs also requested that sanctions, in the form of fees, be imposed based on defendants' counsel's "intentional violation of the Court's order to meet and

---

[3]These employment records were submitted to the Court as part of Exhibit B to plaintiffs' July 19, 2010 letter. The Court notes that in a column to the left of the job categories are a series of Chinese characters. It is unclear if these are the names of the employees serving in those positions or simply the Chinese translation of the job categories.

[4]The Court notes that the actual names of employees would have been necessary in order for defendants to file their taxes. Therefore, the produced documents support plaintiffs' contention that the records were modified or are recent fabrications.

[5]The Plaintiffs' Second Request for Production of Documents was submitted with plaintiffs' December 7, 2010 letter to the Court.

[6]Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Sanctions against Defendants for Failure to Comply with Discovery, submitted on April 8, 2011.

[7]Citations to "Pls.' Reply Mem." refer to plaintiffs' Reply Memorandum of Law in Support of Plaintiff's [sic] Motion for Sanctions against Defendants for Failure to Comply with Discovery," submitted on April 28, 2011.

confer over the discovery issues." (Id. at 2).

The Court, finding that the motion for sanctions was premature, issued a second Order on July 21, 2010, directing the parties again to meet and confer. The Court Ordered that if the parties were "unable to resolve any outstanding discovery disputes, the parties are to so inform the Court by letter within thirty days." (7/21/10 Order). No response to the Court's Order was filed by either party within that thirty day period.

On July 12, 2010, the Court scheduled a settlement conference for August 31, 2010. On August 12, 2010, William Zou, defendants' current counsel, entered his Notice of Appearance.[8] On August 31, 2010, just two and a half hours prior to the scheduled conference,[9] Mr. Zou filed a Motion to Adjourn the conference. The Court granted Mr. Zou's request to adjourn the conference, but on September 1, 2010, plaintiffs' counsel requested that the Court assess fees against defendants' counsel, noting that the conference had been scheduled for months and that his "clients had to take time off of work for the conference and have lost wages, and [counsel] lost time that was reserved for the conference." (Pls.' 9/1/10 Ltr). Plaintiffs' letter also indicated that "[a]lthough our discovery request was sent to Defendants on May 19, 2010, and again on August 13, 2010, to date, Defendants have provided no responses whatsoever, nor responded to any of our settlement demands." (Id.)

---

[8]The Court notes that a change of attorney request was not filed with the Court until November 20, 2011, at which time defendants notified the Court of their intent to replace prior counsel with Mr. Zou.

[9]Although this Court has a chambers rule that requires requests for adjournments to be made at least 48 hours in advance of the conference, Mr. Zou's request was filed at 11:31 a.m. on August 31, 2010, seeking to adjourn the 2:00 p.m. conference.

4

On September 7, 2010, having given defendants almost a week to respond to plaintiffs' letter, the Court Ordered defendants to respond to the letter by September 17, 2010. Nevertheless, defendants failed to respond to plaintiffs' letter. The Court, however, still declined to assess fees against defendants' counsel at that time.

Following the rescheduled settlement conference, which was eventually held on September 30, 2010, the Court issued an Order directing defendants to supplement their discovery responses by October 20, 2010 and Ordered that depositions be completed by January 13, 2011. Despite this clear Order, defendants did not produce the requested discovery, and on November 22, 2010, plaintiffs filed a motion to compel, seeking sanctions under Federal Rule of Civil Procedure 37, based on defendants' continued failure to comply with the Court's Order to supplement discovery.

The Court Ordered defendants to Show Cause by November 29, 2010 why they should not be compelled to produce the required discovery and why sanctions should not be imposed for failure to comply with Court Orders. (11/22/10 Order). On November 29, 2010, defendants' counsel responded to the Court's Order by asserting that plaintiffs had also failed to produce requested discovery. The Court subsequently scheduled a telephone conference with the parties for December 9, 2010, to discuss plaintiffs' motion to compel and other outstanding discovery disputes. Both parties submitted additional letters regarding these disputes prior to the conference. At the conclusion of the conference, defendants were Ordered by the Court to produce to plaintiffs a variety of documentation by December 31, 2010, including any electronically stored information ("ESI") for the payroll records, which plaintiffs had requested

"to ensure that such electronic records, which purport to be contemporaneous time records, are indeed contemporaneous." (Pls.' 1/3/11 Ltr).

## B. Defendants' Continued Noncompliance with Court Orders

On January 3, 2011, plaintiffs informed the Court that defendants had refused to produce the ESI records,[10] noting that: "[Plaintiffs] can only do electronic forensic discovery on ESI if they are produced with its original meta data. The Court had agreed with our previous request and ordered such production, [with] which Defendants have still not complied." (Pls.' 1/3/11 Ltr).

By Order dated January 4, 2011, the Court again Ordered defendants to Show Cause why sanctions should not be imposed for their failure to abide by the Court's earlier Orders. On January 4, 2011, defendants responded to the Court's Order, asserting that they had produced certain requested documents but that "Defendant has not provided ESI records for payroll as it was a small business and does not maintain such records, such factor was fully disclosed to the court and Plaintiff's counsel during last telephonic conference with the court." (Defs.' 1/4/11 Ltr[11]).

Defendants' counsel informed the Court that his client was unsophisticated and was

---

[10]Plaintiffs' letter also detailed many other discovery Order violations by defendants.

[11]In an attempt to excuse defendants' noncompliance, defendants' January 4, 2010 letter accuses plaintiffs of having also failed to comply with Court Orders by not providing the Court with affidavits regarding the status of tax records. However, on the previous day, plaintiffs' counsel had in fact submitted a timely response to the Court's Order and provided the Court with the requested affidavits from his clients. (See Pls.' 1/3/11 Letter, Ex. A).

having difficulty obtaining the requested materials from his computer. Accordingly, the Court gave defendants additional time to comply and Ordered defendants to notify the Court by January 14, 2011 regarding their continued effort to obtain the ESI documents.

On January 17, 2011,[12] defendants' counsel informed the Court that his client "ha[d] called several computer companies and couldn't find anybody capable of obtaining such documents for him." (Defs.' 1/17/11 Ltr). He further asserted that "Plaintiff's [sic] demands [for the ESI data] is [sic] overly burdensome and costly and should be denied." (Id.) This request was denied because the Court had already determined that defendants were to produce the original disk. Defendants nevertheless expressed a willingness "to allow the Plaintiff's [sic] expert supervised access to [defendants'] computers to generate such ESI documents at their own costs and expenses." (Id.) Plaintiffs initially objected to this suggestion, asserting that "Plaintiffs are entitled to the requested discovery without bearing the expense" and therefore requested that the Court compel defendants to produce the requested document at defendants' expense. (Pls.' 1/31/11 Ltr).

The Court held another telephone conference with the parties and, based on the inability of defendants to produce the requested materials, issued an Order on February 10, 2011 requiring defendants to produce their computer for inspection by plaintiffs' counsel. (2/10/11 Order). Plaintiffs' counsel was permitted "to conduct a preliminary review" of the original disk drive in connection with plaintiffs' claim that the defendants' employment records were not kept

---

[12]The Court notes that although the letter is dated January 14, 2011, it was not uploaded onto the ECF system and submitted to the Court until January 17, 2011.

contemporaneously and were falsified after litigation was commenced. (Pls.' 3/28/11 Ltr). The Court held that if, after the review, plaintiffs still wished to have the data analyzed by an expert, plaintiffs were to "assume costs to retain an expert to review such electronic data" and that if it was determined "that the records [were] falsified," the Court authorized plaintiff to apply for an order shifting costs to defendants. (Id.; see also 2/10/11 Order).

On February 17, 2011, plaintiffs' counsel filed another motion to produce, asserting that "Defendants have consistently been untruthful. Defendants had told their counsel that the requested discovery documents are stored in a desktop which is hard to move; however, during the investigation, we found out that the requested discovery documents are stored in a finger sized hard disk." (Pls.' 2/17/11 Ltr). In fact, defendants' counsel's representation to the Court regarding the burden of producing the desktop for inspection, had led the Court to Order that defendants produce the actual computer at defendants' counsel's office for inspection by plaintiffs' counsel. Plaintiffs' counsel also informed the Court that defendants' electronic employment records, upon inspection, appeared to be "not kept contemporaneously and the creation date of many of the discovery documents were prepared after litigation was initiated." (Id.) Plaintiffs therefore requested that the Court Order defendants to produce the "finger-sized" hard disk to plaintiffs for metadata analysis by an expert. (Id.) The Court Ordered defendants to do so by February 22, 2011. (2/17/11 Order). Defendants responded on February 18, 2011, denying plaintiffs' allegation regarding the post-litigation creation of the documents, but asserting that "Notwithstanding, Defendants will provide a hard disk as ordered." (Defs.' 2/18/11 Ltr).

On February 24, 2011, both parties failed to appear for a previously scheduled status conference. The Court therefore Ordered that all discovery be completed by March 18, 2011 and set the schedule for pretrial orders to be submitted. The Court clearly indicated that "No extensions will be granted." (2/24/11 Order). Later that day, plaintiffs notified the Court that defendants had failed to comply with the Court's previous Order to deliver the finger-sized hard disk to plaintiffs by February 22, 2011 and requested that the Court again Order defendants to produce the disk. (Pls.' 2/24/11 Ltr). On February 25, 2011, the Court So Ordered plaintiffs' letter, granting their request.

On March 2, 2011, however, plaintiffs' counsel again contacted the Court regarding defendants' failure to comply with Court Orders, indicating that defendant had only provided plaintiffs with a CD-ROM copy of the files requested. (Pls.' 3/2/11 Ltr). Plaintiffs indicated that "[s]uch hardware does not contain the original program files, which would be required for meta-data analysis" and because "Defendants have demonstrated a pattern of non-compliance and willful violation of the Court's orders," plaintiffs "request a default judgment against Defendants for their intentioned [sic] refusal to comply with their discovery obligations." (Id.)

On March 2, 2011, despite previous Orders from this Court to produce the original disk drive to plaintiffs for analysis by an expert, defendants notified the Court that they had provided a CD-ROM copy of the files, as well as an email version and paper copies. (Defs.' 3/2/11 Ltr). Defendants' counsel asserted that "Plaintiffs' counsel is not an expert on computers or meta-data analysis. Production of the original hard disk to him, rather than an impartial expert, is not productive nor proper preservation of the evidence. . . . Therefore, we respectfully request that

9

the Plaintiffs be directed to hire an expert at their costs to analyze the original hard disk as Ordered by this Court on February 9, 2011." (Id.) Defendants' refusal to produce the original hard disk was in direct contravention of Court Orders, as the Court had already Ordered plaintiffs to pay for and hire an expert and for defendants to provide the disk for analysis by said expert.

Nevertheless, the Court thereafter Ordered plaintiffs to clarify what they intended to do with the original hard disk and to provide the Court with an affidavit from their intended expert "containing a detailed description and explanation of what he or she intends to examine and a protocol for conducting such examination." (3/4/11 Order). The Court also simultaneously and very clearly Ordered "defendants not to tamper with or alter the computer or files in any way pending the conclusion of this litigation." (Id.)

On March 18, 2011, plaintiffs provided the Court with an affidavit from their expert, Hank Pham, Director of Engineering at PayPal, who has a bachelor's degree in electrical engineering and who has been working in the engineering field for over 20 years. (Pham Aff. ¶¶ 1-2). In his Affidavit, Mr. Pham asserted that he intended to investigate defendants' computer drive and "utilize meta-data forensic analysis to determine the origination date of certain files embedded in such computer drive." (Id. ¶ 3). He indicated that he also intended to "excavate and reconstruct hidden or partially destroyed or deleted files." (Id.) Plaintiffs thereupon moved for an Order compelling defendants to produce the original flash disk or the computer drive for examination. (Pls.' 3/18/11 Ltr).

The Court found the expert affidavit to be sufficient and defendants were <u>again</u> Ordered to produce the requested <u>original</u> flash drive by the end of day on Tuesday, March 22, 2011.

(3/18/11 Order). On March 22, 2010, plaintiffs filed another Motion to Compel, indicating that defendants had violated yet another one of this Court's Orders by failing to "produce the requested computer drive by end of day on Tuesday, March 22, 2011." (Pls.' 3/22/11 Letter). Although plaintiffs' letter was filed a few hours prematurely, defendants nevertheless failed to produce the drive. (Defs.' 3/23/11 Letter).

On March 23, 2011, defendants' deadline having expired, defendants' counsel admitted, in a letter to the Court, that the computer disk had not been produced. (Id.) Instead, despite this Court's numerous, clear Orders granting plaintiffs' request to have their expert examine the defendants' computer and Ordering defendants to produce the original flash drive, defendants' counsel decided unilaterally that "it is not necessary to produce the original disk to the Plaintiffs' counsel." (Id.) Defendants' counsel, apparently under the impression that he could ignore this Court's prior Orders, asserted that plaintiffs had not provided a sufficient expert affidavit, stating that to "[s]imply turn-over [sic] the original disk to Plaintiffs' counsel without supervision is not constructive." (Id.)


C.  Spoliation of the Finger-Sized Hard Disk Containing the Original ESI Documents

On March 24, 2011, the Court again Ordered defendants to Show Cause, by the end of the day on Friday, March 25, 2011,[13] why sanctions should not be imposed pursuant to Rule 37 of the Federal Rules of Civil Procedure for defendants' failure to comply with the Court's Order of

---

[13]The Court noted that all discovery, with the exception of the defendants' depositions, which had been delayed until production of the computer drive, was to be completed by March 25, 2011. (3/24/11 Order).

March 18, 2011 to produce the <u>original</u> disk drive. (3/24/11 Order). The Court warned the defendants that, in addition to attorney's fees and costs, the Court was considering imposing sanctions in the form of an adverse inference at trial, allowing to the jury to infer that the defendants' employment records had not been created contemporaneously, but rather were created after this litigation was commenced. (<u>Id.</u>) The Court also <u>again</u> Ordered the defendants to produce the original disk drive to plaintiffs' counsel by the end of the day on Friday, March 25, 2011, warning that failure to comply with this directive would result in the imposition of sanctions. (<u>Id.</u>)

It was only in response to this Order to Show Cause and the threat of severe sanctions that defendants finally admitted that the reason they had not produced the original drive was because defendants' principal had "lost" it. In their letter dated March 25, 2011, defendants responded to the Court's Order by asserting that sanctions should not be imposed because defendants' principal, "Mr. Shen accidentally lost the original computer drive a/k/a flash disk while carrying it around among counsel's office, restaurant and home. Despite of [sic] Mr. Shen's efforts to search for it since March 18, 2011, he has not been able to find it. Failure to produce the original is not willful nor blatant, but unforseen and accidental." (Defs.' 5/25/11 Letter). In his Affidavit, Mr. Shen notes: "I understand I have been ordered to produce it, and understand the serious consequence if I willfully don't produce it. However, I simply can't produce it because I mostly [sic] likely lost it." (Shen Aff.[14] ¶ 8). Interestingly, defendants indicate knowing that the drive

---

[14]Citations to "Shen Aff." refer to the affidavit of defendant Shen, which was submitted as an Exhibit to defendant' May 25, 2011 letter to the Court.

was lost or missing as early as March 18, 2011, and yet, on March 23, 2011, defendants' counsel did not disclose that information to the Court, asserting instead that production of the disk was unnecessary. (Defs.' 3/23/11 Letter).[15] It is therefore apparent that defendants' numerous excuses were most likely delay tactics to stall the Court's discovery of this spoliation.

Although now admitting the loss of the drive, defendants' counsel, in his March 25, 2011 letter, continues to argue that the Court's prior Orders were incorrect and that the defendants should never have been Ordered to produce the disk. Defendants maintain that "[t]here is no prejudice to the Plaintiffs" as a result of the loss of the original because defendants have turned over copies by email and in a CD-ROM format. (Defs.' 3/25/11 Ltr). Defendants assert that "[t]he purported expert retained by the Plaintiffs have [sic] not alleged any distinction between the original disk and the email copy or the CD-ROM copy. Production of the original drive was burdensome and not reasonably accessible." (Id.)

However, this Court, having already considered all of these arguments, repeatedly Ordered defendants to produce the original disk, explicitly finding that the plaintiffs had the right to have an expert analyze the metadata on the original disk drive, because it was only through an examination of the original that plaintiffs could determine when the documents were created. Furthermore, had defendants not "lost" the finger-sized disk, it certainly would have been "reasonably accessible" and its production would not have been at all burdensome. Defendants,

_____

[15]The Court notes that in defendants' March 25, 2011 letter, defendants also asked the Court to reconsider the March 18, 2011 Order to produce the original disk, arguing that defendants' counsel had not had an opportunity to respond to plaintiffs' request and asserting that the previously produced emailed copy and CD-ROM were sufficient. (Defs.' 3/25/11 Letter). This request is denied. The Court had previously considered defendants' arguments and found them to be without merit.

in this letter, also brazenly assert that they "have diligently and in good faith complied with discovery demands and other Court orders." (Defs.' 3/25/11 Ltr). This assertion ignores the facts and the history of this case; defendants have failed to make themselves available for depositions and have also, despite numerous Orders from the Court, failed to sufficiently respond to plaintiffs' interrogatories and document requests. (See 3/16/11 Order; see also discussion, infra at 34-37). In addition to these violations, as detailed below, the defendants have repeatedly chosen to ignore this Court's scheduled deadlines, instead of requesting extensions of time.

Despite this conduct, defendants now request that "[i]n light of the fact that the Defendants accidentally lost the finger-sized original drive, . . . Plaintiffs be directed to analyze the email copy and/or the CD-ROM copy and that the Defendants be excused from producing the original drive." (Defs.' 3/28/11 Ltr). This request is denied for the same reason that this Court required production of the original drive in the first instance (and many instances thereafter); it cannot be determined from copies whether the records were kept contemporaneously or were created recently.

On April 8, 2011, plaintiffs filed a formal motion seeking, among other things, entry of a default judgment as a sanction for the spoliation of the flash drive. In the alternative, plaintiffs seek an Order precluding defendants from presenting any payroll records or other electronic employee records at trial; an instruction to the jury allowing them to draw the adverse inference that the defendants willfully fabricated evidence; and an award of attorney's fees and cost for time spent by plaintiffs' counsel in connection with attempting to obtain this discovery. (Pls.' Mem. at 1, 6). In accordance with the briefing scheduled set by the Court, defendants filed their

14

response to plaintiffs' motion on April 19, 2011, and plaintiffs filed their reply on April 28, 2011.[16]

Having considered the procedural history of this case as well as the parties' submissions in connection with this motion, the Court finds that defendants have spoliated evidence and committed various other infractions worthy of the imposition of sanctions as explained herein.

DISCUSSION

A. <u>Spoliation - Legal Standard</u>

Rule 37 of the Federal Rules of Civil Procedure authorizes a court to impose various sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2); <u>see also</u> <u>Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A.</u>, 112 F.R.D. 185, 189 (S.D.N.Y. 1986) (noting that Rule 37(b) "provides for sanctions where a party fails to honor its disclosure obligations, especially after court orders"). It is clear that sanctions may therefore be imposed when a party spoliates evidence in violation of a court order. <u>See, e.g.,</u> <u>West v. Goodyear Tire & Rubber Co.</u> 167 F.3d 776, 779 (2d Cir. 1999) (citing <u>John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.</u>, 845 F.2d 1172, 1176 (2d Cir. 1988)). The courts in this

---

[16]Defendants' counsel also apparently felt "compelled to submit" a sur-reply, disregarding this Court's rules, which are publicly available on the internet, and which clearly state that: "No sur-replies will be accepted without prior permission. . . . Strict compliance with these rules . . . is required. Papers not in compliance with any relevant rule will not be considered in the absence of extraordinary circumstances." Since no request for permission to file a sur-reply was received and since the Court finds that plaintiffs' reply does not contain any new factual allegations or legal arguments sufficient to warrant the filing of a sur-reply, defendants' sur-reply has not been considered in deciding this motion for sanctions. Indeed, upon review, it appears that the vast majority of arguments raised in defendants' sur-reply are mere repetition of the arguments made in the response papers and various other letters described above.

circuit have further held that even where no explicit discovery order has been issued, the court has the inherent power to preserve the integrity of judicial proceedings by, among other things, imposing sanctions for spoliation. See id.; Kronisch v. United States, 150 F.3d 122, 126-27 (2d Cir. 1998); Sterbenz v. Attina, 205 F. Supp. 2d 65, 73-74 (E.D.N.Y. 2002); Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. 396, 399 (S.D.N.Y. 2001). "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) (internal citations omitted). However, any such sanction "should be 'molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine,' which is predicated upon the rationale that by destroying evidence, one party has deprived the other of the ability to prosecute or defend an action." Sterbenz v. Attina, 205 F. Supp. 2d at 74 (citing West v. Goodyear Tire & Rubber Co., 167 F.3d at 779).

The Second Circuit has defined spoliation as "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d at 779); see also Houlihan v. Marriot Int'l, Inc., No. 00 CV 7439, 2003 WL 22271206, at *1 (S.D.N.Y. Sept. 30, 2003). A party has an obligation to preserve evidence when the party is on notice "that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d at 436 (citing Kronisch v. United States, 150 F.3d at 126); Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. at 400 (holding that a party is under an obligation to retain documents

16

and other evidence that it knows may be relevant to a pending or future litigation). "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." Zubulake v. UBS Warburg L.L.C. (Zubulake IV), 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (emphasis added). This obligation to preserve relevant evidence exists whether or not the documents have been specifically requested in a demand for discovery or whether there has been an explicit discovery order issued. Kronisch v. United States, 150 F.3d at 126-27; Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. at 400.

A party seeking sanctions for the spoliation of evidence must establish that three elements are present in order to be awarded such sanctions:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002); Farella v. City of New York, No. 05 CV 5711, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007); see also Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 107-09; Fujitsu Ltd. v. Federal Express Corp., 247 F.3d at 436; Zubulake IV, 220 F.R.D. at 220.

Therefore, in order to determine whether sanctions should be imposed upon the defendants in this case for the spoliation of the computer drive, the Court begins by considering whether the plaintiffs have sufficiently established these three required elements. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 107.

17

B. Spoliation - Analysis

    1. Prong One: Obligation and Control

The first element necessary to establish spoliation requires that the plaintiffs show "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." Id. Courts in this circuit have found that "once a party reasonably anticipates litigation it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) (quoting Treppel v. Biovail Corp., 249 F.R.D. 111, 118 (S.D.N.Y. 2008); Zubulake IV, 220 F.R.D. at 218). This obligation to preserve evidence "runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'" Chan v. Triple 8 Palace, No. 03 CV 6048, 2005 WL 1925579, *6 (S.D.N.Y. Aug. 11, 2005) (quoting Turner v. Hudson Transit Lines, 142 F.R.D. 68, 73 (S.D.N.Y. 1991)); see also Vagenos v. LDG Fin. Servs., L.L.C., No. 09 CV 2672, 2009 WL 5219021, at *2 (E.D.N.Y. Dec. 31, 2009).

"Once a 'litigation hold' is in place, a party and her counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold,'" which will "involve communicating with the 'key players' in the litigation. . . . Unless counsel interviews each [player], it is impossible to determine whether all potential sources of information have been inspected." Zubulake v. UBS Warburg L.L.C. (Zubulake V), 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (emphasis added). "Key players" have been defined as "the people identified in

18

a party's initial disclosure and any subsequent supplementation thereto. Because these 'key players' are '[those] likely to have relevant information,' it is particularly important that the preservation duty be communicated clearly to them." Id. at 433-34.

The flask disk at issue here was solely in defendants' possession; they had complete control over the disk. Mr. Zou, defendants' counsel, clearly had the responsibility to advise the defendants to maintain the flash drive, containing the original payroll records, and to ensure its retention as soon as this case was filed. See Chan v. Triple 8 Palace, Inc., 2005 WL 1925579, at *7 (noting that "the utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent"); see also Phoenix Four, Inc. v. Strategic Resources Corp., No. 05 CV 4837, 2006 WL 1409413, at *5-6 (S.D.N.Y. May 23, 2006) (underscoring counsel's affirmative duty to ensure that all sources of relevant information are discovered); Zubalake IV, 220 F.R.D. at 217 (holding that anyone who anticipates being a party to a lawsuit "'is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request'" (quoting Turner v. Hudson Transit Lines, 142 F.R.D. at 72)).

Furthermore, at the time that the disk drive was "lost," this litigation had been ongoing for well over a year. Defendants were not only clearly aware of the litigation but were also well aware of the plaintiffs' repeated allegation that the payroll documents were falsified and their requests to have an expert examine the original disk drive, as well as the Court's Orders granting these requests. Therefore, even if Mr. Zou had failed to institute a litigation hold upon the

19

commencement of the litigation, he certainly should have instituted a specific litigation hold with respect to the flash drive when it was first requested by plaintiffs and Ordered produced by the Court. Having failed to do that, Mr. Zou was repeatedly reminded, in both motions to compel and in Court Orders, of the importance of the flash drive, and therefore, he had innumerable opportunities to institute a hold on the flash drive prior to its destruction. Not only were defendants required to institute a proper litigation hold, but there are "a number of steps that counsel should take to ensure compliance with the preservation obligation," such as notifying the client of that obligation and repeatedly reminding key players of the duty to preserve evidence. Zubulake V, 229 F.R.D. at 432-34.

Further aggravating defendants' counsel's failure to institute a litigation hold is the fact that the Court explicitly warned defendants "not to tamper with or alter the computer or files in any way pending the conclusion of this litigation." (3/4/11 Order). Thus, even if counsel and the defendants had not yet instituted a litigation hold by March of 2011, they were very clearly notified of their obligation to do so when the Court issued its March 4, 2011 Order. It is unfathomable how or why, after defendants were Ordered to and did produce the original disk at defendants' counsel's office for review by plaintiffs' counsel, Mr. Zou would simply permit his client to walk out of his office with the disk and thereafter "lose" it. Indeed, no satisfactory explanation has been provided and Mr. Zou has made no representation to the Court that he ever instructed his clients to maintain the original disk or that he attempted to maintain it himself. Instead, counsel's repeated assertions that sanctions should not be imposed because the drive was "lost" accidentally and in "good faith," demonstrate that counsel is unfamiliar with both his

20

obligation to institute a litigation hold and the rules regarding the preservation of evidence. Counsel's utter failure in this case to make any attempt to safeguard this critical evidence, which had been the subject of numerous conferences, motions, and several Court Orders over a period of many months, and which was the key to determining whether defendants had fabricated evidence, is inexcusable.

Moreover, defendants themselves are equally responsible for failing to maintain the disk in a secure fashion, even if not properly instructed by counsel. As the court in <u>Vagenos v. LDG Financial Services, L.L.C.</u> noted, the defendants decide who to retain as their counsel and thus they are also "responsible for [their] attorney's negligent conduct or bad advice in connection with the action." 2009 WL 5219021, at *2. Although counsel is required to inform his clients of their obligations, "[a]t some point, the client must bear responsibility for a failure to preserve." <u>Zubulake V</u>, 229 F.R.D. at 433. Here, defendants failed to preserve important, relevant evidence within their control, despite their clear obligation to do so, satisfying the first prong of the spoliation test.


2. <u>Prong 2: State of Mind</u>

The second prong of the spoliation analysis requires that plaintiffs show "that the records were destroyed 'with a culpable state of mind.'" <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d at 107. "[A]s the Second Circuit recently observed, '[t]he law in this circuit is not clear on what state of mind a spoliator must have when destroying [evidence].'" <u>Sterbenz v. Attina</u>, 205 F. Supp. 2d at 74 n.13 (citing <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d at

107-08). Some courts in this circuit have required a showing of bad faith, some have required proof of intentional destruction, and others have drawn an inference based on gross negligence. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 107-08 (citing Reilly v. NatWest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. 1999), cert. denied, 528 U.S. 1119 (2000)). Thus, the Second Circuit has concluded that "a case by case approach [i]s appropriate." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 108. Plaintiffs, however, have the burden of showing that the evidence was destroyed, at a minimum, either knowingly or negligently. See id. at 109.

In Zubulake V, the court noted that the requirement that counsel "take affirmative steps to monitor compliance" with a litigation hold is not a particularly burdensome one. 229 F.R.D. at 434 (emphasis added). In fact, "[c]ounsel does not have to review these documents, only see that they are retained." Id. Therefore, "the central question . . . is whether [defendant] and its counsel took all necessary steps to guarantee that relevant data was both preserved and produced. If the answer is 'no,' then the next question is whether [defendant] acted willfully . . . negligently or even recklessly." Id. at 431.

Neither negligence or gross negligence has been clearly defined in the context of discovery misconduct, such as spoliation. See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 463. "[T]hese terms simply describe a continuum. Conduct is either acceptable or unacceptable. Once it is unacceptable the only question is how bad is the conduct. . . . That said, it is well established that negligence involves unreasonable conduct in that it creates a risk of harm to others." Id. at 463-64. "'Gross

22

negligence has been described as a failure to exercise even that care which a careless person would use.'" Id. (citation omitted). Courts in this circuit have found that the "failure to preserve evidence resulting in the loss or destruction of relevant information is surely negligent, and, depending on the circumstances, may be grossly negligent." Id. at 464-65. However, "the failure to issue a written litigation hold constitutes gross negligence because that failure is likely to result in the destruction of relevant information." Id. (emphasis in original); see also Chan v. Triple 8 Palace, Inc., 2005 WL 1925579, at *7 (finding that "the utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent"); Zubulake IV, 220 F.R.D. at 217.

In Pension Committee, the court held that a party's "fail[ure] to execute a comprehensive search for documents and/or fail[ure] to sufficiently supervise or monitor [] document collection," was "best characterized as either grossly negligent or negligent." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 477. While the failure to collect records from those who are not key players may constitute negligence, the failure to collect and preserve records from key players "constitutes gross negligence." Id. at 465, 477. Even in less extreme cases, where the defendant "failed to institute a full preservation program" and failed to ensure that all necessary employees, including support staff, knew about the preservation program, sanctions have been awarded. Treppel v. Biovail Corp., 249 F.R.D. at 118-19.

It is abundantly clear that the defendants in this action did not take any, let alone "all necessary steps to guarantee" that the disk drive was maintained. Zubulake V, 229 F.R.D. at 431.

23

Not only does it appear that counsel failed to issue a written litigation hold, but he appears to have failed to issue a hold of any kind. This "utter failure to establish any form of litigation hold at the outset of litigation [or any time since then] is grossly negligent." Chan v. Triple 8 Palace, Inc., 2005 WL 1925579, at *7.

Furthermore, considering the very convenient timing of the loss of the drive, just after the Court Ordered its production for review by an expert, and the defendants' numerous delay tactics, the Court finds that this "loss" is highly suspicious and very clearly constitutes gross negligence; it may have even been intentional. Although defendants assert that "[i]t is clearly not beneficial for the Defendants to concoct losing the flash drive after having already provided Plaintiffs with both access and copies" (Defs.' Mem.[17] at 3), the Court disagrees. Plaintiffs claim that the lost original version of the disk drive "contained many files which demonstrated that such files were not contemporaneously kept." (Pls.' 3/2/11 Ltr). Without the original, plaintiffs are deprived of the opportunity to have their expert evaluate the disk and their claim of fabrication is based solely on the review by plaintiffs' counsel. The fact that the drive was "lost" after plaintiffs' counsel's examination and after the issuance of the Order to produce it for expert evaluation, certainly supports an inference that defendants had a motive to destroy the evidence to prevent plaintiffs from being able to prove this fabrication claim. Defendants' gratuitous assertion that "Defendant is willing to provide" plaintiffs with the flash drive, "but is unable to provide [it] because it has been lost," and their self-serving claim that "such failure is not willful"

---

[17]Citations to "Defs.' Mem." refer to the defendants' Memorandum of Law in Opposition to Motion for Sanctions against Defendants for Failure to Comply w[i]th Discovery, submitted on April 19, 2011.

(Defs.' Mem. at 7), borders on frivolous.

Regardless, even if the "loss" of this disk was not willful and intentional, it was, at a minimum, grossly negligent. The Court therefore finds that defendants have acted with the requisite degree of culpability to satisfy the second prong of the spoliation test. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 107.


3. Prong 3: Relevance and Prejudice

Once evidence is alleged to have been destroyed due to a party's negligence or gross negligence, the Court considers whether "the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Id. at 107-09; Zubulake V, 229 F.R.D. at 431. The party seeking sanctions must make a showing that the destroyed evidence would have been favorable to its case. See De Espana v. Am. Bureau of Shipping, No. 03 CV 3573, 2007 WL 1686327, at *6 (S.D.N.Y. June 6, 2007) (noting that "where the culpable party was negligent, there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party"); see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 467-68; Zubulake IV, 220 F.R.D. at 221. However, courts have held that "[t]he burden placed on the moving party to show that the lost evidence would have been favorable to it ought not to be too onerous, lest the spoliator be permitted to profit from its destruction." Treppel v. Biovail Corp., 249 F.R.D. at 123 (quoting Chan v. Triple 8 Palace, Inc., 2005 WL 1925579, at *7); see also Residential Funding Corp. v. DeGeorge Fin.

Corp., 306 F.3d at 109; Kronisch v. United States, 150 F.3d at 128; In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 199-200 (S.D.N.Y 2007).

In considering the burden of establishing relevance and prejudice when documents have been destroyed, at least one court has found that "[t]he burden of proof question differs depending on the severity of the sanction. For less severe sanctions – such as fines and cost-shifting – the inquiry focuses more on the conduct of the spoliating party than on whether documents were lost, and if so, whether those documents were relevant and resulted in prejudice to the innocent party." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 467. However, "for more severe sanctions – such as dismissal, preclusion, or the imposition of an adverse inference – the court must consider, in addition to the conduct of the spoliating party, whether any missing evidence was relevant and whether the innocent party has suffered prejudice as a result of the loss of evidence." Id.

"[T]he burden of proving that evidence would have been relevant to a party's claims or defense is proportional to the mens rea of the party who destroyed the evidence," and "where the party destroyed the evidence due to ordinary negligence [as opposed to bad faith], 'the burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.'" Gutman v. Klein, 2008 WL 4682208, at *7. To satisfy this burden, the innocent party may provide sufficient evidence that would tend to show that the lost documents "'would have been favorable to [its] case.'" Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 468 (quoting Toussie v. County of Suffolk, 2007 WL

4565160, at *8).

Where, as in this case, a spoliating party has been grossly negligent, resulting in the loss of evidence, many courts have presumed relevance, although the presumption is not required. Id.; see also Treppel v. Biovail Corp., 249 F.R.D. at 121-22 (holding that "under certain circumstances 'a showing of gross negligence in the destruction . . . of evidence' will support [a relevance] inference") (internal citations omitted). However, even if the Court chose not to apply this presumption of relevance here, the Court has already determined that the flash drive is relevant to this litigation.

In addition to showing that "the destroyed evidence would have been relevant to the contested issue," plaintiffs must show that they have been prejudiced by the loss of the evidence. Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. at 400 (quoting Kronisch v. United States, 150 F.3d at 127); see also Sovulj v. United States, No 98 CV 5550, 2005 WL 2290495, at *5 (E.D.N.Y. Sept. 20, 2005) (holding that "[t]he prejudiced party may be permitted an inference in his favor so long as he has produced some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files"). As the court in Pension Committee noted, at times "it is impossible to know the extent of the prejudice suffered . . . as a result of those emails and documents that have been permanently lost . . . 'Because we do not know what has been destroyed, it is impossible to accurately assess what harm has been done to the innocent party and what prejudice it has suffered." 685 F. Supp. 2d at 478.

In the instant case, plaintiffs sought production of the original metadata to determine whether "the employee records were made contemporaneously or whether they were fabricated

27

evidence." (Pls.' Mem. at 4). As plaintiffs note:

> The Court on numerous occasions made concessions
> for Defendants' benefit. Defendants claimed they are
> a small company and did not have the resources to produce
> electronic discovery with original metadata, as required
> under Fed. R. Civ. P. Rule 34. The Court shifted the burdent
> [sic] to Plaintiffs to first review the file and then to retain
> an expert at their cost to submit an affirmation to the Court.
> Defendants decided that they did not have to comply and
> only sent a copy of the electronic files, without original
> metadata, in direct violation of the Court's orders.

(Id.) Plaintiffs' counsel has represented that based on his brief review of the original files, there

was evidence to support plaintiffs' contention that the documents were recent fabrications.

However, once the original disk drive was "lost," there was "no way to review [the] computer

file's 'creation date'" or have an expert analyze it. (Id.)

Defendants argue that other than plaintiffs' "self-serving conclusory allegations,"

plaintiffs have failed to show why they have been prejudiced by "the loss of the actual flash

drive" when they have been provided with "exact digital copies." (Defs.' Mem. at 2).

Defendants assert that "Plaintiffs' allegation in its motion that there is no way to review a file's

creation date unless an original is reviewed, is conclusory and unsupported by any evidence. It is

undeniable that the digital copy CD-rom certainly contains dates with the files and could be

inspected." (Defs.' Mem. at 2-3). Ironically, defendants provide no support for their assertion

and ignore both the plaintiffs' expert's affidavit and this Court's prior findings that the copies

were not an adequate substitute for the original.

The Court finds that given plaintiffs' counsel's preliminary review of the computer files,

coupled with the affidavit of plaintiffs' expert, there is more than sufficient evidence to

substantiate plaintiffs' claim that the electronic payroll records were created after the

commencement of the litigation or, at the very least, were not created contemporaneously. The loss of the original disk therefore warrants "an inference in [plaintiffs'] favor" that plaintiffs' have been prejudiced by the loss of the disk drive. Here, not only have defendants deprived plaintiffs of the ability to use the drive as evidence at trial, but they have deprived them of the ability to even have it analyzed by an expert.

Based on the above, the Court finds that plaintiffs have satisfied their burden under the third prong of the test to demonstrate both the relevance of the original disk drive and the prejudice suffered by plaintiffs as a result of its loss. Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 467.

Accordingly, given that plaintiffs have established the three elements necessary to warrant the imposition of sanctions for spoliation of evidence, the Court grants plaintiffs' motion for sanctions as detailed below. However, before determining what the appropriate sanctions should be for the loss of the flash drive, the Court considers plaintiffs' request for sanctions based on defendants' other discovery violations.

C. Defendants' Failure to Provide Other Discovery

In addition to the spoliation of the disk drive, defendants have failed to appear for their scheduled depositions and failed to provide interrogatory responses, in violation of several Court Orders. Defendants have also been warned on numerous occasions that sanctions would be imposed for these other discovery violations.

29

1. Defendants' Failure to Appear for Deposition

On January 7, 2011, plaintiffs filed a motion to compel defendants to produce Shao Dong Chu,[18] one of the defendants in this case, for deposition. Plaintiffs allege that despite previously confirming the deposition for January 10, 2011, defendants' counsel "refused to produce his witness for the deposition, despite such witness being available." (Pls.' 1/7/11 Ltr). In response, defendants denied that they were refusing to produce the defendant witnesses, arguing that, because they had served deposition notices first, they should be permitted to conduct plaintiffs' depositions prior to defendants being deposed. (Defs.' 1/7/11 Ltr). On the date scheduled for the depositions, January 10, 2011, defendants failed to produce their witnesses, instead writing that:

> There are two witnesses, Junheng Shen and Shao Dong Chu, to be produced by the Defendants for depositions. As advised to the Plaintiff in the past, Mr. Shen is currently on an overseas trip and won't be back until the end of today. While we have advised the Plaintiff that Mr. Chu was available for deposition, I was informed that he had a slip and fall last Friday, is being hospitalized and won't recover for at least a week.

(Defs.' 1/10/11 Ltr).

The Court scheduled a telephone conference for later that day in order to resolve these issues. At the conclusion of the conference, the Court Ordered plaintiffs to be deposed on February 10-11, 2011 and defendants' depositions to take place on February 17-18, 2011,[19] giving defendant Shen time to return from his trip and defendant Shao time to recover from his fall.

---

[18]The parties alternate between referring to this individual as both Mr. Shao and Mr. Chu.

[19]It is unclear why defendants' depositions did not proceed as scheduled.

On March 16, 2011, when defendants continued to refuse to make themselves available for deposition prior to the Court Ordered date for completion of discovery, the Court awarded plaintiffs sanctions in the form of attorney's fees and costs[20] incurred in connection with plaintiffs' motion to compel. Although inclined at that time to enter an Order precluding the defendants from offering any witnesses at trial, the Court refrained from imposing the sanction of preclusion at that time due to plaintiffs' consent to the suggested late deposition dates. (3/16/11 Order). Instead, the Court gave defendants one final opportunity to comply, scheduling their depositions for March 29 and April 1, 2011. The Court also extended the March 18, 2011 deadline for the completion of discovery to accommodate the defendants' schedules, as defendants were apparently only available on March 29, 2011 and April 1, 2011. The Court's Order warned that if defendants' "witnesses fail to appear or the depositions cannot proceed [as scheduled] due to defendants' conduct, the Court will issue an Order of Preclusion, precluding defendants from calling witnesses at trial." (Id.)[21]

On March 28, 2011, plaintiffs informed the Court that they would not be able to proceed with the defendants' depositions because the defendants refused to produce their witness for the

---

[20]Plaintiffs' counsel submitted an affidavit asserting that in connection with the earlier motion to compel, he "expended three hours worth of work, including (i) calling Mr. Zou, (ii) reviewing the case file to prepare the exhibits and (iii) drafting and filing the letter to the Court," in preparing his March 15, 2011 motion to compel. (Affidavit of C.K. Lee, Esq. ("Lee Aff."), filed on March 24, 2011, ¶ 3). In total, plaintiffs request reimbursement for this motion in the amount of $1,050, calculated at a rate of $350 per hour. (Id. ¶¶ 2, 4; see discussion, infra at 45-47).

[21]The Court notes that the March 16, 2011 Order also adjusted the schedule for the Pretrial Order, with plaintiffs' draft due by April 22, 2011, defendants' draft due by May 13, 2011 and the Joint Pretrial Order to be filed by May 27, 2011. The Court explicitly stated that "No further extensions will be granted." (3/16/11 Order (emphasis in original)).

March 29, 2011 deposition at plaintiffs' counsel's office, insisting that the deposition be held at the deponent's home or at defendants' counsel's office.[22] (Pls.' 3/28/11 Ltr). Plaintiffs also complained that they would be unable to "productively examine" the witnesses on the dates previously set by the Court, because defendants had not provided the original computer files and had failed to supplement their interrogatory responses, "in direct violation of the Court's Order of March 16, 2011."[23] (Id.)

In response to plaintiffs' claim that defendants were refusing to appear at plaintiffs' office for deposition, defendants contend that the witness in question, Mr. Shao, had broken his leg[24] and that sometimes poor health, among other factors, has "justified court orders moving a deposition from the site selected by the examining party." (Defs.' Mem. at 6 (emphasis added)). However, rather than requesting a court order, defendants' counsel simply directed his client to appear at counsel's office. As plaintiffs note, the witnesses "were specifically instructed by the Court to be produced at Plaintiffs' counsel's office in Manhattan" and "only the day before" the deposition did defendants insist that plaintiffs' counsel move the location. (Pls.' Mem. at 5). Plaintiffs also contend that "[s]uch conduct flies in the face of good faith compliance" (id.), and that "Defendants should have brought this to the Court's attention, rather than unilaterally

---

[22]The Court notes that plaintiffs' depositions had previously been taken at defendants' counsels' office, as is the usual practice. Therefore, absent a specific request, the defendants' depositions were expected to occur at plaintiffs' counsel's office. Defendants never raised this issue with the Court prior to plaintiffs' letter of March 28, 2011.

[23]See discussion, infra at 34-36.

[24]The Court notes that the witness had broken his leg two and a half months earlier. Counsel had plenty of time to contact the Court if his client was physically unable to appear at plaintiffs' counsel's office.

32

determining by themselves that they did not have to appear for the deposition [at] Plaintiff's counsel's office on the day before the scheduled deposition." (Pls.' Reply Mem. at 3-4 (emphasis added)).

The Court agrees and finds defendants' conduct to be sanctionable. Upon receiving defendants' eleventh hour demand for a change of location for the deposition, plaintiffs immediately contacted the Court to object. (See Pls.' 3/28/11 Letter). Despite the Court's prior Orders and the fact that the plaintiffs had applied to the Court for guidance, defendants' counsel acted unilaterally to change the place of the deposition without plaintiffs' agreement and told his client to appear at his office.

Defendants allege that the witness appeared at defendants' counsel's office on the day of his deposition and "waited to be deposed until 11:30 a.m.," but left when the plaintiffs' counsel never appeared. (Defs.' 3/29/11 Ltr). Defendants therefore assert that because plaintiffs' counsel failed to appear at defendants' counsel's office for the deposition, the Court should find that plaintiffs have waived the deposition of Mr. Shao. (Defs.' Mem. at 4). However, even if the defendant did actually appear at defendants' counsel's office, this was not a good faith attempt to comply with his obligation to appear for his deposition. Defendants' counsel made no attempt to contact plaintiffs' counsel while the witness was allegedly in his office waiting to be deposed. Furthermore, defendants waited to notify plaintiffs of the alleged continued injury and their wish to change the deposition location until the day before the deposition, despite having known about Mr. Shao's injury for many weeks. (See Defs.' 3/28/11 Ltr, Ex. A; Defs.' 1/10/11 Ltr).

Nevertheless, defendants attempt to blame plaintiffs, asserting that once they notified the

33

plaintiffs that the witness wished to have the deposition closer to defendant Shao's residence, "Plaintiffs' counsel failed to respond." (Defs.' Mem. at 4). Instead, as already noted, plaintiffs appropriately contacted the Court. This stunt by defendants appears to be an attempt to feign good faith, while avoiding defendant's deposition and casting blame onto plaintiffs' counsel. Accordingly, defendants' request to have the Court find that "Plaintiffs be deemed to have waived the deposition of Mr. Shao" is denied. (Id. at 6).

Given that the Court made it clear in its March 16, 2011 Order that it was the defendants' burden to produce their witnesses for these depositions, defendants' counsel should have contacted the Court; defendants did not have the unilateral right to decide not to appear. In addition to Mr. Shao, it also appears that the other defendant, Mr. Shen, was never deposed, and no excuse has been provided for this failure by defendants. Defendants were clearly warned in the Court's March 16, 2011 Order that a failure to produce these two defendant witnesses for deposition on March 29, 2011 and April 1, 2011, would result in an Order of Preclusion. As such, the Court imposes sanctions as set forth below.

### 2. Defendants' Responses to Interrogatories

Plaintiffs further complain that defendants have failed to properly respond to the plaintiffs' interrogatories, despite numerous Court Orders to supplement those responses. (See Pls.' Mem. at 3; 3/16/11 Order). In their March 15, 2011 letter, plaintiffs complained to the Court about defendants' "nonsensical" and "unverified" interrogatory responses and requested that defendants be Ordered to provide "responsive responses." (Pls.' 3/15/11 Ltr). In response,

defendants simply asserted that they had "diligently provided" interrogatory responses and that "[i]t is unreasonable and prejudicial for the Plaintiffs to requested additional discovery responses two days before the deadline." (Defs.' 3/15/11 Ltr).[25] The Court found that plaintiffs' request was not unreasonable; it was not a request for additional responses, but for adequate responses which should have been provided initially.

Defendants' continued and increasingly inaccurate assertions that they have responded fully to plaintiffs' discovery, have wasted significant amounts of this Court's time, and suggest that perhaps the defendants and defendants' counsel have not even read the Court's Orders in this case. For example, contrary to defendants' claim that they "have complied with Interrogatories" and their assertion that the "Court has certainly not ruled that a failure to provide responses to Plaintiff's [sic] interrogatories would result in sanctions/default" (Defs.' Mem. at 3-4, 8; see also discussion, supra at 6 n.11), this Court explicitly held, in its March 16, 2011 Order, that:

> The inadequacy of defendants' responses to document requests and interrogatories was previously addressed in this Court's Order of October 1, 2010, among others, wherein the Court Ordered defendants to supplement their discovery responses, including their responses to interrogatories. . . .The defendants' initial response [to plaintiffs' interrogatories], which essentially stated that they "do not possess the documents requested," is wholly inadequate and unresponsive. Given that the Court has issued many Orders requiring defendants to supplement these responses, the defendants' continued failure to comply constitutes a violation of the Federal Rules and warrants the imposition of sanctions pursuant to Rule 37.

(3/16/10 Order (emphasis added)). Furthermore, defendants' contention that "any failure to comply with court order was brief" is also inaccurate, as their noncompliance continues to this

---

[25]It is puzzling that defendants could simultaneously claim that such a request, made two days before the discovery deadline, was prejudicial and unreasonable and yet also be unwilling to appear for depositions until two weeks after the deadline had expired.

day. (Defs.' Mem. at 5; see also Pls.' Reply Mem. at 3 (noting: "To date, Defendants have still not supplemented their responses to Plaintiffs's initial interrogatories to Defendants")).

In sum, defendants should not be so quick to accuse the plaintiffs of making "misleading" and "untrue statements." (Defs.' Mem. at 4). Throughout this litigation, defendants and to some extent, defendants' counsel, have consistently been evasive, uncooperative, and seemingly engaged in delaying tactics, perhaps intentionally, as plaintiffs assert (see, e.g., Pls.' Reply Mem. at 4), or perhaps simply because they have failed to read the Court's Orders. Either way, their participation thus far in this litigation has been anything but in "good faith," and sanctions are clearly warranted for, among other things, defendants' continued failure, after being given numerous opportunities, to provide plaintiffs with appropriate answers to plaintiffs' interrogatories.

### 3. Defendants' Late Submission of Their Proposed Pretrial Order

Defendants also failed to comply with Court Orders to file the Pretrial Order. The Court originally Ordered the parties to file the Pretrial Order by April 22, 2011, but the schedule had to be revised when defendants failed to produce their witnesses for deposition. When neither party filed their draft of the Pretrial Order in accordance with the revised deadlines, the Court, on June 10, 2011, Ordered the plaintiffs to submit their Pretrial Order by June 30, 2011, with defendants' draft due by July 21, 2011. (6/10/11 Order). Although plaintiffs submitted their draft Pretrial Order on schedule, defendants again failed to comply with the Court's schedule and failed to request additional time. Accordingly, on Monday, July 25, 2011, four days after defendants'

36

deadline had expired, the Court Ordered defendants to file their draft proposed Pretrial Order by Friday, July 29, 2011. The Court warned defendants that if they failed to comply, the Court would assume that defendants did not intend to introduce any evidence at trial or to object to any of the plaintiffs' proposed evidence and that the defendants would be precluded from doing so. On July 29, 2011, defendants finally filed their proposed Pretrial Order. The history of this case, this instance being no exception, suggests to the Court that defendants and defendants' counsel only acknowledge and respond to Court Orders when severe sanctions are threatened.[26]

The parties are now reminded that the Joint Pretrial Order is still due on or before **August 4, 2011**, as previously Ordered. The Joint Pretrial Order should take into account all of the evidentiary sanctions imposed herein.

## D. Sanctions

### 1. Spoliation Sanctions

Having found that plaintiffs meet all three prongs of the spoliation test, the Court must now determine what, if any, sanctions to impose, and decide if additional sactions are warranted for defendants' other noncompliance with this Court's Orders.

As already noted, "the determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d at 436 (internal citations omitted). "[A]t the end of the day the judgment call of whether to

---

[26]Although defendants have finally complied regarding the Pretrial Order, the Court notes that had another hour passed and defendants' deadline expired, the Court was planning to recommend that the district court enter a default judgment against the defendants.

award sanctions is inherently subjective. A court has a 'gut reaction' based on years of experience as to whether a litigant has complied with its discovery obligations and how hard it worked to comply." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 471. The Court must determine whether the defendants' "[c]onduct is either acceptable or unacceptable," and therefore warrants sanction. Id. at 463-64. As already noted, the Court finds that the defendants in this case have acted with gross negligence, at best, in not preventing the spoliation of relevant evidence. The Court therefore finds that sanctions are warranted for the spoliation of the flash disk.

As plaintiffs note, while the appropriate sanction to be imposed lies within the Court's discretion, sanctions "should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" West v. Goodyear Tire & Rubber Co., 167 F.3d at 779 (citing inter alia Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988)). (See Pls.' Mem. at 1-2). In addition to outright dismissal, many other sanctions, such as an adverse jury inference and additional discovery, are available to remedy acts of spoliation. See Dahoda v. John Deere Co., 216 Fed. Appx. 124, 124 (2d Cir. 2007) (holding that a trial court should not order dismissal for spoliation where less drastic alternatives exist); see also Fed. R. Civ. P. 37(b)(2) (providing examples of available sanctions). "The choices include - from least harsh to most harsh - further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default or dismissal (terminating sanctions)." Pension Comm. of the Univ. of

<u>Montreal Pension Plan v. Banc of Am. Sec., L.L.C.</u>, 685 F. Supp. 2d at 469.

Specifically, plaintiffs have requested that the Court enter a default judgment against the defendants, or in the alternative, issue the following sanctions for the spoliation of the flash disk: 1) an Order precluding defendants from presenting the electronic employee records at trial; 2) imposition of an adverse inference that the defendants willfully fabricated evidence; and 3) attorney's fees and costs. (Pls.' Mem. at 1, 6). As already explained, the docket sheet for this case is littered with a litany of plaintiffs' motions to compel defendants to produce discovery and Orders to Show Cause regarding the same, most of which were ignored by defendants. In this case, sanctions are necessary to "alleviate the harm suffered" by the plaintiffs as a result of the spoliation of the original flash disk. <u>Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C.</u>, 685 F. Supp. 2d at 470.

Addressing the sanctions requested by plaintiffs, the Court reluctantly denies plaintiffs' request to enter a default against the defendants. Although defendants' conduct was grossly negligent and irresponsible, approaching the "extreme circumstances" that would justify the draconian remedy of default, the Court declines to order entry of default at this time. <u>See West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d at 779-80; <u>see also Dahoda v. John Deere Co.</u>, 216 Fed. Appx. 124, 125 (2d Cir. 2007). Although there was a disturbing amount of carelessness on defendants' part in the retention of the disk drive, and an utter failure on defendants' counsel's part in not establishing a litigation hold, plaintiffs have not demonstrated that they have been sufficiently prejudiced by the absence of the drive to warrant judgment in their favor. The Court finds that other sanctions, such as an adverse jury inference, will adequately remedy the instant

spoliation. See Dahoda v. John Deere Co., 216 Fed. Appx. at 124 (holding that a trial court should not order dismissal for spoliation where less drastic alternatives exist); see also Fed. R. Civ. P. 37(b)(2) (providing examples of available sanctions).

Instead, the Court Orders that the defendants be precluded from presenting any payroll or other employment records, electronic or otherwise, at trial. "The FLSA requires that every employer subject to the law 'make, keep, and preserve such records of the persons employed by [it] and of the wages, hours, and other conditions and practices of employment . . .'" Scott v. City of New York, 592 F. Supp. 2d 501, 506 (S.D.N.Y. 2008) (quoting 29 U.S.C. § 211(c)). In the absence of any employment records listing employees by name, the plaintiffs may rely on the presumption provided for under the FLSA that where the employer fails to maintain adequate records, the jury will be instructed that they may presume that the plaintiffs' testimony as to their wages and hours is accurate. The Supreme Court has made it clear that "where an employer's records are inaccurate or inadequate, all an employee need offer to substantiate an FLSA claim is 'sufficient evidence [to permit] a just and reasonable inference' as to the amount of his uncompensated work." Brock v. Wackenhut Corp., 662 F. Supp. 1482, 1486 (S.D.N.Y. 1987) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded by statute on other grounds as stated in Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C. Cir. 1972)). Where, as here, "an employer's records are maintained in such a way as to make it unreasonably burdensome to discover whether FLSA violations have occurred, a plaintiff need only establish those violations by presenting 'sufficient evidence [to permit] a just and reasonable inference' of underpayment." Brock v. Wackenhut Corp., 662 F. Supp. at 1487.

The Court further Orders that, if plaintiffs so request, the jury should also receive an adverse inference charge that would permit the jury to conclude, based on defendants' spoliation, that the employee records on the flash disk were not kept contemporaneously, but were fabricated evidence created after the initiation of this litigation. "[S]poliation of evidence germane 'to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.'" Zubulake IV, 220 F.R.D. at 216 (citing Kronisch v. United States, 150 F.3d at 126).

An "adverse inference instruction is an extreme sanction and should not be given lightly." Id. at 220, 216. However, "[l]ike many other sanctions[,] an adverse inference instruction can take many forms, again ranging in degrees of harshness." Id. at 220, 216. Having previously warned the defendants in its March 24, 2011 Order that it was already contemplating the imposition of an adverse inference instruction, the Court finds that this type of sanction is now appropriate in this case.

Finally, the Court finds that an award of reasonable attorney's fees and costs incurred in connection with the filing of this spoliation motion is warranted. Fed. R. Civ. P. 37(b)(2)(C); see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 471; Zubulake V, 229 F.R.D. at 437. "Such a monetary award 'may be appropriate to punish the offending party for its actions or to deter [the] litigant's conduct, sending the message that egregious conduct will not be tolerated. . . . Compensable costs may arise either from the discovery necessary to identify alternative sources of information or from the investigation and litigation of the [] destruction itself." In re NTL, Inc. Sec. Litig., 244 F.R.D. at

201 (quoting <u>Chan v. Triple 8 Palace, Inc.</u>, 2005 WL 1925579, at *10).

Defendants in this case inexplicably destroyed an obviously relevant piece of evidence in the course of this litigation when they were clearly on notice of plaintiffs' claims. Therefore, although default does not appear appropriate in this case, the Court finds that, in addition to the aforementioned sanctions, plaintiffs deserve an award of reasonable expenses, including attorney's fees and costs incurred in connection with this motion to compel and with all of the other efforts expended by plaintiffs to obtain the disk drive.

### 2. Sanctions for Discovery Violations

In seeking sanctions for defendants' other discovery violations, plaintiffs request an Order precluding defendants from presenting witnesses at trial. This request is granted. Despite defendants' failure to make themselves available on three separate occasions when the Court had Ordered their depositions to occur,[27] the Court has heretofore refrained from imposing this sanction upon defendants, even for their unwillingness to appear for depositions prior to the March 18, 2011 end of discovery deadline. In its March 16, 2011 Order, the Court granted defendants one more chance to appear, noting that if the witnesses failed to appear on the scheduled date or the depositions could not proceed due to defendants' conduct, the Court would issue "an Order of Preclusion, precluding defendants from calling witnesses at trial." (3/6/11

---

[27]The Court initially Ordered that all depositions be completed by January 13, 2011. After plaintiffs' motion to compel the depositions, the defendants' depositions were scheduled for February 17 and 18, 2011. After the depositions again did not proceed pursuant to that schedule, the depositions were set for March 29 and April 1, 2011, dates specifically requested by defendants. It is now August and the depositions have still not been completed, nor does it appear that defendants have made any attempt to make themselves available.

Order). As such, having been warned that this Order of Preclusion would enter and having nevertheless failed to appear for their depositions, the Court hereby Orders that defendants are precluded from testifying at trial. Moreover, as discovery has long closed by now, defendants will be precluded from presenting any witnesses who have not been produced for depositions or any other evidence which has not been produced to plaintiffs.

The Court also awards plaintiffs reasonable attorney's fees and costs incurred in having to file numerous letters and motions in an effort to compel defendants to produce their witnesses for deposition and to supplement defendants' wholly inadequate interrogatory responses. Thus, to the extent that plaintiffs' counsel wishes to submit the appropriate supporting documentation, the Court will consider a fee application for any hours expended in connection with enforcing these discovery obligations.

### 3. Reconsideration of the March 16, 2011 Sanctions Order

Defendants ask the Court to reconsider its prior March 16, 2011 Order, which imposed sanctions for defendants' initial failure to appear for the earlier scheduled depositions. Specifically, defendants argue that plaintiffs' March 15, 2011 letter did not specifically request sanctions and that defendants did not address that issue in their response. (Defs. 3/28/11 Letter). Defendant's motion for reconsideration of the earlier Order is denied.

As detailed above, the Court had previously warned defendants on numerous occasions that their continued failure to comply with Court Orders would result in the imposition of sanctions. Furthermore, plaintiffs had previously asked for sanctions in the form of attorney's

43

fees on numerous occasions. The Court deemed it appropriate to finally impose sanctions at that time. As noted earlier, Rule 37 of the Federal Rules of Civil Procedure provides that where a motion for disclosure or discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Although the Rule provides some exceptions when the Court should not impose these sanctions, the Court finds that none of those apply here. (Id.)

Rule 37 provides that:

> If a party or a party's officer, director, or managing agent — or a witness designated under Rule 30(b)(6) or 31(a)(4) — fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Furthermore, "[i]f a party fails to comply with an order under Rule 35(a) requiring it to

produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), unless the disobedient party shows that it cannot produce the other person." Fed. R. Civ. P. 37(b)(2)(C). Lastly, the Rule states that: "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Therefore, the Court's decision to impose sanctions upon defendants was justified by defendants' conduct, but defendants had been repeatedly warned of the possibility of sanctions and a specific request by plaintiffs on each occasion was not necessary. The Court therefore denies defendants' request to vacate this Order.

With respect to the award of counsel fees incurred in connection with the earlier March 16, 2011 Order, plaintiffs' counsel has requested an award of fees in the amount of $1,050, based on three hours of work billed at the rate of $350 per hour. Counsel represents that this work included: 1) calls to defendants' counsel; 2) review of the case file to prepare exhibits; and 3) drafting and filing the letter to the Court in connection with the motion to compel filed on March 15, 2011. (Lee Aff. ¶ 3).

In response to plaintiffs' counsel's affidavit for the attorney's fees previously awarded, defendants "request evidence to substantiate [the hours billed] in the event the Court proceeds to imposes [sic] costs." (Defs.' 3/28/11 Letter). Defendants' counsel is correct that, in accordance with the law in this district, plaintiffs' counsel is required to provide the Court with

45

contemporaneous billing records as mandated by the Second Circuit in <u>New York State Ass'n for</u> <u>Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d Cir. 1983). In addition, counsel must demonstrate that the requested rate of $350 per hour is consistent with "the hourly rates employed in the district in which the reviewing court sits." <u>Simmons v. New York City Transit</u> <u>Auth.</u>, 575 F.3d at 174. It is well established that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Blum v. Stenson</u>, 465 U.S. at 896 n.11.

The Court may not award fees for hours requested where the requesting party has not provided adequate documentation. <u>Scott v. City of New York</u>, 626 F.3d 130, 133-34 (2d Cir. 2010) (quoting <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d at 1147-48). In <u>Carey</u>, the Second Circuit stated that "contemporaneous time records are a prerequisite for attorney's fees in this Circuit . . . we think it appropriate to convert our previously expressed preference for contemporaneous time records into a mandatory requirement . . . Hereafter, any attorney who applies for court-ordered compensation in this Circuit for work done after the date of this opinion [1983] must document the application with contemporaneous time records." 711 F.2d at 1147-48. As already noted, it is plainly the attorney's burden to maintain these contemporaneous records, <u>see</u> <u>F. H. Krear & Co. v. Nineteen Named Trustees</u>, 810 F.2d at 1265, and the fee applicant's burden to prove an award of attorney's fees. <u>See</u> <u>Blum v. Stenson</u>, 465 U.S. at 886, 896 n.11. Therefore, fee applications are subject to denial where the fees have not been adequately documented and are unsupported by contemporaneous records. <u>See, e.g.</u>,

Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d at 53; Nu-Life Constr. Corp. v. Bd. of Ed. of the City of New York, 795 F. Supp. 602, 606 (E.D.N.Y. 1992) (holding that "[s]ince no records have been provided for this time, it may not be considered in determining the fee award").

Here, plaintiffs' counsel has failed to submit contemporaneous billing records showing the hours expended in connection with the motion and he has submitted no evidence to show that the requested billing rate is reasonable for the Eastern District of New York. The Court notes that billing rates in this district vary widely depending on the nature and difficulty of the case and the experience of the attorneys involved. See, e.g., Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris, Inc., 190 F. Supp. 2d 407, 426-29 (E.D.N.Y. 2002). However, plaintiffs' counsel has not provided the Court with any information regarding his experience, qualifications, or the number of years that he has been practicing.

Therefore, if plaintiffs seek an award of attorney's fees and costs incurred in connection with either the spoliation of evidence or any of the other discovery disputes for which the Court has awarded sanctions, including the March 16, 2011 Order, plaintiffs' counsel is Ordered to provide the necessary supporting documentation for those fees and costs to the Court by **August 22, 2011**.[28] Defendants may respond to that request on or before **September 6, 2011**.

---

[28]In their Reply Memorandum, plaintiffs requested that the monetary sanctions awarded in this case be joint and several as between defendants and defendants' counsel, asserting that "[b]y advising Defendants to not attend the deposition at Plaintiff's counsel's office and failing to assist Defendants to properly respond to interrogatories, Defendants' counsel clearly is clearly [sic] responsible for Defendants' failure to comply with discovery Orders by the Court. Defendants' counsel is at least partially responsible for the missing computer file caused by the failure to advise their clients to maintain evidence during the course or discovery, subject to Court Order." (Pls.' Reply Mem. at 7). Although Federal Rule of Civil Procedure 37 does provide for the imposition of sanctions upon a party or "the attorney advising that party, or both," see Fed. R. Civ. P. 37 §§ (a)(5)(A), (b)(2)(C), (d)(3), plaintiffs have failed to provide any case law to support its assertion that such a sanction is appropriate in this instance. Certainly, in a

## CONCLUSION

In conclusion, in order to restore the plaintiffs to the position they would have been in but for defendants' spoliation and "to alleviate the harm suffered" by the plaintiffs, Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 470, the Court imposes the following sanctions upon defendants: 1) an Order of Preclusion, prohibiting the defendants from presenting witnesses to testify at trial; 2) an Order of Preclusion prohibiting defendants from presenting any payroll records or other employment records at trial; 3) an adverse inference that the defendants willfully fabricated the electronic employee records; and 4) attorney's fees and costs for time spent by plaintiffs' counsel on the various discovery disputes that have occurred in this case.

Plaintiffs' counsel is Ordered to provide the Court with the aforementioned information regarding his previous fee request (see supra at 45-47), as well as detailed time records for these newly awarded fees, including legal support if plaintiffs want to pursue sanctions against defendants' counsel himself, by **August 22, 2011**, with any response due by **September 6, 2011**. The parties are also Ordered to file their Joint Pretrial Order on or before **August 4, 2011**.

---

case such as this one, where counsel has failed to ensure the safeguarding of critical evidence, failed to be candid with the Court regarding the loss of the disk, failed to ensure either timely and complete responses to interrogatories or production requests, failed to request permission to change the location of his client's deposition, and failed to respond to numerous Court Orders or to make timely requests for additional time, all of which have resulted in added expense to plaintiffs and a waste of judicial resources, such sanctions may be appropriate. Therefore, if plaintiffs wish to pursue this request for sanctions, they should brief this issue upon submitting their request for attorney's fees and costs.

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing System ("ECF") or by mail.


**SO ORDERED**.
Dated: Brooklyn, New York
      August 3, 2011

_____
Cheryl L. Pollak
United States Magistrate Judge